Coös,
Feb. 2, 1932.

ROMEO J. BARBIN, *Guardian v.* HUGH K. MOORE, *Adm'r.*

*Warren W. James* and *Ira W. Thayer* (*Mr. James* orally), for the plaintiff.

*Crawford D. Hening* (by brief and orally), for the defendant.

PEASLEE, C. J.   No question appears to have been made as to the form of the proceeding.   The appropriate remedy would be a bill in equity asking that the plaintiff, whose wards' property has been taken to pay a debt of the defendant's decedent, for which it was pledged as collateral security, be subrogated to the secured creditor's right in property of the decedent which was also pledged for the debt.   But as the parties submitted their claims upon agreed facts, the superior court made an order that judgment should be entered in accordance with the conclusion as to whether the plaintiff is entitled to reimbursement.   The question whether assumpsit could be maintained (*White* v. *Company*, 75 N. H. 504; *Hunt* v. *Association*, 68 N. H. 305) need not be considered.   Upon filing a proper bill in equity the plaintiff will be entitled to a decree.   *Hunt* v. *Association, supra,* 309.

I. Various incidental questions, thought to have a bearing upon the main issue in the case, have been argued. For convenience, they are disposed of before taking up that issue.

The rights of these parties are to be determined as of the death of the defendant's decedent. Nothing has occurred since that time to affect their related positions. A third party, having a lien on the insurance and also on the real estate, which has since been sold by the administrator, elected to take its pay out of the insurance money. This automatically discharged the lien upon the real estate, as far as the secured creditor was concerned. But if, as between the estate and the policy beneficiaries, it was the duty of the administrator to pay the debt, elementary equitable doctrines subrogate the beneficiaries to the right against the mortgage security including the fund into which that security has been converted by the administrator. *Merrill* v. *Houghton*, 51 N. H. 61.

It has been argued that these policies in a Massachusetts company, payable in that state, are Massachusetts contracts and that all the transactions here involved are to be settled by Massachusetts law. This is a misconception of the situation. The rights of the insurer, or of any party against the insurer, are not involved. Nor is there any question as to the power of the assured to take this insurance from his children and give it to his creditors, or make it a part of his estate. The issue is whether his dealings with the policies in this state amounted to such action. The extent of the assignment made by the pledge of the policies as collateral security is the controlling factor in the case. This pledge was made in this state by and to local residents, and the designated beneficiaries also resided here. Such an undertaking is to be dealt with according to local law. *Saloshin* v. *Houle, ante,* 126; *Spencer* v. *Myers,* 150 N. Y. 269; *Henry* v. *Thompson,* 78 N. J. Eq. 142; *Wilde* v. *Wilde,* 209 Mass. 205. "Whether a contract is assignable depends upon the law of the place of making the contract; whether if assignable it has been assigned, and what the effect of the assignment is upon the rights of the parties depends upon the law of the place of assignment." Am. Law Inst. Restatement, Conflict of Laws, Proposed Final Draft, *s.* 383 A, *Comment (a).*

It may be added, however, that nothing has been cited or found to indicate that the law in Massachusetts differs from the conclusions reached herein. *Blinn* v. *Dame,* 207 Mass. 159, much relied upon in argument, contains nothing to the contrary. It merely holds (and that by a divided court) that a general assignment for the benefit of creditors gives the assignee a right to compel a formal assignment of

a policy similar to those here involved. Statutes similar in all respects to those hereinafter relied upon have been in force in that state for many years. *Smith* v. *Bullard*, 61 N. H. 381. And whatever there may be in earlier cases to the effect that a designated beneficiary, whose nomination is subject to change, has no legal rights during the life of the insured is nullified by the holding in *Tyler* v. *Treasurer and Receiver General*, 226 Mass. 306, that such a beneficiary takes a present, vested right.

Some reliance is placed upon the fact that when the policies were pledged to the bank the then designated beneficiary in one of them, Imelda, joined in the assignment. She was the wife of the insured and the debt secured by the policies was his. Her interest in the policies was not affected by her attempt to pledge it for the debt of her husband. P. L., c. 288, s. 2. "The case is as if the plaintiff [the wife] had not signed the assignment." *Stokell* v. *Kimball*, 59 N. H. 13, 14.

It has been suggested that the statute (P. L., c. 277, s. 1) providing certain safeguards as to policies wherein a married woman is the designated beneficiary forbids any alteration in derogation of her rights. The language of the case last cited tends to support such a conclusion; but in a later case, where the point was pressed in argument, it was decided that if the policy contained a reservation of the right to change the designated beneficiary, such action would cut off her right. *Barton* v. *Association*, 63 N. H. 535. The change from the wife to the children was legal. Whether, if that change had not been made, his pledge of the policy would have been valid against the widow's claim to the insurance is a question which it is unnecessary to consider.

As to one of the policies the designation was changed to the present beneficiaries after the pledge of the policies to the bank. In the view which is hereinafter taken of the nature and extent of the pledge, this fact is immaterial to the decision of the case. The conclusion being that the insured did not appropriate anything beyond what was necessary to secure the bank, all the remainder of the title went to the designated beneficiaries, whether they were named before or after the pledge.

Another thought evident throughout the defendant's argument is that the eventual receipt of the insurance money by the estate of the decedent, especially as far as creditors of the estate are concerned, is a fact which the law will view with complacency at least, and from which it will be slow to afford relief. Upon this phase of the case there is no occasion to consider common-law rules. The legislature

has declared the policy of the state upon the subject, and the relative rights of beneficiaries and creditors of the estate.

"When a policy of insurance is effected by a person on his own life or the life of another, expressed to be for the benefit of a third person or his representatives, the party for whose benefit such policy is so expressed to be made shall be entitled to the sum so insured, against the claims of the creditors or representatives of the party effecting the same." P. L., c. 277, s. 2. This statute deprives the creditors of any right to lay claim to the insurance, even where fraud upon them is charged. While upon proof of fraud they may recover the premiums paid by the decedent (Ib. s. 3), they have no other claim upon the fund. Smith v. Bullard, 61 N. H. 381. The statute applies to policies which reserve to the insured the right to change the beneficiary as well as to those which do not. The case last cited was of the former class. The same conclusion has been reached elsewhere. Farmer &c. Co. v. Albright, 90 N. J. Eq. 132.

The fact that the estate will be insolvent unless it can hold the fund arising from the sale of the mortgaged property is urged as a reason why the plaintiff cannot have relief. This fails to take into account the comparative rights of designated beneficiaries and creditors of the insured, as established by the statute. Proof that the fund would be applied to the satisfaction of the claims of the decedent's creditors does not entitle the administrator to hold it, as against the beneficiaries. Mellows v. Mellows, 61 N. H. 137. Even if a fraud upon the creditors had "been intended and effected" the claim of the administrator would be limited to the amount of the premiums paid by the decedent. Smith v. Bullard, supra, 383.

It is argued that to permit the plaintiff to recover this fund would be to treat his wards as creditors of the decedent, and their occupancy of that position is vigorously denied. They were not his creditors, and do not claim to be. The liability sought to be enforced is not a debt of the decedent to the beneficiaries. The plaintiff's claim is that a fund belonging to his wards by subrogation came into the administrator's hands, and that he persists in holding it against them under a claim that it is the property of the estate. This is the only wrong complained of. The liability alleged was incurred after Leclerc's death. It grew out of the bank's lawful appropriation of collateral properly pledged for the decedent's debt. The beneficiaries thereupon claimed to succeed to the bank's rights under the mortgage, but the administrator sold the property upon which the plaintiff asserts a lien. Although the administrator acted within his official authority

in asserting a claim for the estate, an adverse judgment thereon would not ordinarily run against the estate, but against him personally. *Thomson* v. *Smith*, 64 N. H. 412. Whether the circumstances are such that the equitable procedure followed in that case could be adopted, is immaterial here. Whatever the form of the judgment or decree, it would, in substance, be for the return of a fund found in the hands of the administrator but belonging to the plaintiff. In no aspect of the case would there be a recovery upon the ground that the children were their father's creditors.

It is said that too much stress is laid upon the fact that the bank held a mortgage, that in order to recover here the beneficiaries must establish a valid claim as general creditors. It is true that they must establish such a right, but only as claimants through the bank. The mortgage is of importance here because held by the creditor to whose rights the plaintiff succeeds. The beneficiaries succeeded to all the creditor's rights, and as the mortgage security affords them payment in full they elect to pursue that security rather than to proceed as the successors in right to the bank's general claim against the estate, or to proceed against the administrator personally.

Another proposition advanced is that in order to hold the plaintiff entitled to recover it is necessary to conclude that the decedent owed the mortgagee $7700 and the beneficiaries $7700 more; because, it is said, a debt to the beneficiaries must be proved to entitle them to subrogation. The error in the argument is apparent. The plaintiff never claimed any such double liability. Payment of the $7700 by the administrator either to the bank in the first instance or to the plaintiff as equitable assignee of the bank's rights in this proceeding would satisfy all the demands that have been set up. The plaintiff's proposition is that the estate owed $7700; while the defendant claims that upon a proper adjustment of the rights of the parties it owed nothing.

It is said that since the decedent retained the power to change the beneficiaries those already named took no immediate interest in the policy. The law of this state is otherwise. The question has frequently arisen in suits upon the contracts of mutual benefit societies. These arrangements are life insurance contracts, and governed by the statutes and common law applicable to such insurance. *Smith* v. *Bullard*, 61 N. H. 381; *Barton* v. *Association*, 63 N. H. 535; *Mellows* v. *Mellows*, 61 N. H. 137.

The fact that the right of the beneficiary is subject to defeasance, does not deprive it of the character of a legal interest. It has been variously described as "a contingent interest, which her husband had

the power to defeat" (*Barton* v. *Association*, 63 N. H. 535, 538), a contingent interest which "did not vest irrevocably" (*Knights of Honor* v. *Watson*, 64 N. H. 517, 519), and as depriving "anyone from acquiring a vested interest in the insurance during the lifetime of the member." (*Sanborn* v. *Black*, 67 N. H. 537.) The characterization of it in *Legion of Honor* v. *Adams*, 68 N. H. 236, 238 as "a contingent interest,—a mere expectancy" involves a confusion of terms, if expectancy is used in its proper legal sense. It is probable however that there was no purpose so to use it, but rather to indicate in other language the holding that the interest is contingent. It is unnecessary to determine whether the rule announced in these cases is the correct one, or whether the doctrine that the interest is vested but defeasible (*Tyler* v. *Treasurer and Receiver General*, 226 Mass. 306) is the more in consonance with the state of the title.

The Massachusetts rule has been criticized, largely upon the ground that it is opposed to the weight of authority. 31 Yale Law Jour: 343. But it is evidently more in line with the views which have been declared in this state than are the numerous opinions (largely *dicta* so far as the issues between beneficiaries and the insured are concerned) wherein all legal standing is denied to beneficiaries whose rights are subject to cancellation. In substance the law in this state and in that is the same. The distinction between contingent and vested but defeasible is sometimes of importance when title to real estate is involved. But when the only title is a right under a contract to receive a sum of money which is to become due upon the happening of a future event, the need to observe the niceties of real estate nomenclature disappears. Under either the Massachusetts or the New Hampshire rule the designated beneficiaries took a present legal interest in the right to receive the money upon the death of the party insured. So long as the power of defeasance is not exercised, they stand in the position of one having a title which the law will recognize, and for the protection of which they are entitled to the usual legal and equitable remedies. *Mellows* v. *Mellows*, 61 N. H. 137.

The nature of powers to change beneficiaries, assign the policy, or pledge it as collateral have been described in the following language. "They were not property rights; they were not vested rights; they were not rights that were of the slightest monetary value in themselves, and could not become such until the insured had exercised them in the prescribed manner, which he never did; at the most they were mere potentialities which the insured never converted into actualities; and until he had effected this conversion; the rights of the

beneficiary in the policies and their proceeds were not limited or affected to the slightest extent. All of the rights reserved ... were conditioned ... upon his personal action." *Farmer &c. Co.* v. *Albright,* 90 N. J. Eq. 132, 135. "The power of appointment is the one thing in the contract which is given to the member." *Barton* v. *Association,* 63 N. H. 535, 538.

The same idea has been expressed as a general rule in this state. "The technical difficulty once thought to exist in holding that there is a present right in personal property, which another has the concurrent right to dispose of at will, is answered upon the theory that the objection 'is the result of confounding the distinction between property and power.' *Burleigh* v. *Clough,* 52 N. H. 267, 272. The *jus disponendi* is not title, but a mere power, which may or may not be exercised. ... The title which is subject to such a power is a vested interest." *Burns* v. *Nolette,* 83 N. H. 489, 494.

In a peculiar sense a life insurance policy may be said to be the property of the insured. But it is not subject to the claims of his creditors at his death unless he elects to make it so. Property over which he has a power of disposal is perhaps as correct a description of his right as can be stated. It therefore follows that in order for any creditor to maintain a claim thereto he must prove some act of the insured making it thus liable. No claim against it can be maintained upon the general ground that the policy was the property of the insured, liable, in common with his other property, for his debts. The creditors have only such rights in the insurance as the insured gave them. Unless he manifested an intent to give them rights, or unless the legal effect of what he did was to confer rights upon them, they have no claim against the insurance.

Cases are to be found which are said to take a different view of the nature of the policy contract, and of the effect of an assignment by the assured upon the rights of the designated beneficiaries. The cases in which this matter has been discussed usually involve the rights of the party to whom the assignment was made and who stands as a purchaser for value. Although what is said in the opinions often seems to point to the conclusion that all right has been taken from the named beneficiary, or that he never had any right, all that has been decided is that the rights of the assignee are superior to those of the beneficiary. What has been said is to be read in the light of the questions then under consideration. So limited, it is unobjectionable. It is only when it is sought to treat it as applicable to a wholly different situation that it is made to appear to support erroneous conclu-

sions. And if such deduction is a fair inference from those decisions, the basis therefor is to be found in a view of the general nature and purpose of life insurance and of the power of disposal which is opposed to that which prevails here.

It is argued that the absence of any decisions upon the issue presented here is convincing proof of the plaintiff's lack of right. No one, it is said, ever thought of presenting such a claim. But when it is considered that the claims which have been litigated are much less favorable to the beneficiary such argument as the situation presents is in favor of the plaintiff. No one ever thought of contesting such a claim.

A full review of the comparative rights of all the parties does not appear to have been the subject of judicial consideration. The real situation is that the policy contract provides for a fund which may be dealt with in several ways. No one of these is exclusive of the others, and the exercise of one destroys or suspends the others only as far as necessary to give full effect to the former, as exercised. The right to assign or pledge is superior to the right of the named beneficiaries; but the latter may be called the residuary right, and it constitutes a legal claim upon all of the title that has not been disposed of in the exercise of the superior right. *Mellows* v. *Mellows*, 61 N. H. 137.

There are few, if any, cases which go to the extent of denying the continued existence of the underlying interest of a designated beneficiary. None has been cited or found which decides that after the satisfaction of the purposes of the assignment the beneficiary had no rights in the remaining policy proceeds, or in the whole proceeds if the assignment is released in any way.

If it were conceded that in some way the assignment made the policy proceeds the property of the insured *pro tanto*, it would only effect this result as far as intended. *Burns* v. *Nolette*, 83 N. H. 489. It is conceded that a payment by the insured of the debt to secure which the assignment as collateral was made would satisfy the assignment and restore full title to the beneficiaries at his death. The defendant here does not seek to recover from the plaintiff the amount paid on the debt by the insured in his lifetime. A logical application of the theory that the assignment was a recaption of property would lead to such a recovery. The proposition, then, is that the assignment was something more than the pledge was declared to be, yet less than a full disposal of the entire title to any of the insurance. Such an appropriation could be made. *Burns* v. *Nolette, supra.* Whether it was made remains to be considered.

II. The defendant's statement that the ultimate issue is whose money paid the debt, correctly describes one aspect of the case. It may be brought a little closer to the facts here by saying it depends upon who owned the insurance.

There are but two possible claimants to that title, the named beneficiaries, represented here by their guardian, the plaintiff, and the personal representatives and creditors of the insured represented by the administrator, the defendant. Whichever of these has the superior right to the insurance is entitled to prevail in this proceeding. In the determination of that issue it becomes necessary to take up the transactions dealing with the policies and to ascertain their legal effect.

At Leclerc's death his two daughters owned the right to receive the insurance, subject only to such limitations as he had placed thereon in his lifetime. At the time of the pledge as collateral the policies were in force, each with properly designated beneficiaries. Those beneficiaries then owned all that anyone did of the right to receive the money at Leclerc's death. If they did not own the whole title to that right, it is certain that no one else owned any of it. From the nature of the contract Leclerc himself could not own the right to receive money after he was dead "as an instant obligation." *Tyler* v. *Treasurer and Receiver General*, 226 Mass. 306. All that he had in that respect was a power of appointment, a right to reduce, encumber or destroy the title of the then designated beneficiaries. *Barton* v. *Association*, 63 N. H. 535.

In this state of the title Leclerc exercised his power to pledge the policies as collateral security, in the event of his death, for a debt he was about to incur. That was all he did. He did not undertake to make a formal change of beneficiaries, either in whole or in part. If he had wished to have the insurance go to pay the debt in any event and to the enrichment of his estate, he could have made his creditor the designated beneficiary to the extent of its claim. His failure to do this is significant of his purpose in the execution of the power. It evidences his design to secure his prospective creditor, and at the same time not to impair the beneficiaries' title beyond what was necessary to protect the lender. The distinction between an assignment of a policy and a change of beneficiary is one well recognized in law. *Anderson* v. *Bank*, 90 N. J. Eq. 78; *Mutual Benefit &c. Co.* v. *Swett*, 222 Fed. Rep. 200; Joyce, Ins. *s.* 327 A. Both are permitted under these policies, and the choice between them made by the insured indicates what he had in mind to accomplish by the transaction.

The appointment of designated beneficiaries under the policies gave them certain rights. In order to defeat them it must be made to appear that the execution of the power in derogation of those rights was broad enough to accomplish that end. *Mellows* v. *Mellows,* 61 N. H. 137. It is not to be extended upon any theory that in some fashion or other the estate or its general creditors have an equitable claim upon the insurance fund. One of the prime ideas in life insurance is the creation of a fund free from such liabilities. This is reinforced by the statute before cited. P. L., *c.* 277, *ss.* 1, 2.

If the insurance policy contracts had been the absolute property of the children and had been loaned to the father with power to pledge the same as collateral security for his debt, it would be perfectly plain that the plaintiff could recover here. The substance of the transaction is not changed by the fact that their title was defeasible. Not having been defeated, and having now become absolute, their title is encumbered only to the extent of the execution of the power of disposal. Their title was impaired as far as required to carry out the contract with the bank and no further. After the pledge, as before, the designated beneficiaries were the owners of the right to receive the money at his death. He never undertook to divest that right. Until he changed the beneficiaries he could not deny such right. He never made the bank a general beneficiary, nor did any act to indicate the execution of a purpose to make any part of the insurance a part of his estate.

The root of the defendant's claim is that in some way the decedent made the insurance policies payable for the benefit of his estate to the extent of the mortgage debt. The improbability of the existence of such a purpose is a fact to be considered in determining the extent to which the execution of the power of disposal goes. He desired to borrow money, and evidently had to furnish more security than the mortgaged real estate would afford. More security to the lender was all he needed and apparently all he undertook to appropriate. There is no evidence of any purpose to change the relation between his estate and the insurance money. There can hardly be a doubt that if the real estate security had been ample the policies would not have been pledged.

The argument that he intended to appropriate the insurance to the payment of this debt is also negatived by the way he dealt with the matter after the pledge. During the comparatively short time that he lived he paid a substantial part of the mortgage debt from his own funds.

But it is said that although there may have been no intent to deprive the beneficiaries of the insurance in case Leclerc lived to pay off the mortgage debt, yet he did intend that in the case of his death the debt should be paid from the insurance. Nothing in the record of these transactions is pointed out as showing any such purpose. The claim is that it is the reasonable inference from the situation of the parties and the act of pledging the policies. The inference is sought to be drawn from the known tendencies of human nature. It has no other support.

If it were conceded that such an act would be the more in accordance with parental instinct and ordinary human action, that would not be enough to transfer the title to this fund. Action expressive of the thought was necessary. *Weston* v. *Society*, 79 N. H. 245. The policies provided a plain way to make it effective. As before stated, the choice of another method of giving the bank the added security is significant of the purpose in mind. Not only could the insured have provided that the insurance should be used to pay the debt existing at his decease by making the bank the designated beneficiary to the extent of its claim against the estate, but a mere direction in the pledge to resort to the insurance first would have answered the purpose of expressing the alleged design. But one searches in vain for any word or act indicating such purpose.

The case stands no differently than it would if the beneficiaries had themselves pledged their interest in the policies to secure this debt. The fact that the power to pledge resided in another party does not increase the scope of the pledge. Nor does the fact that there was also an unexercised power to take away all the beneficiaries' rights affect the validity or extent of what was in fact done in the exercise of the power. Except for this pledge their title remained as it was before. The property remained theirs, and could not be taken directly by the estate or its creditors. As it could not be so taken by direct proceedings, equity will see to it that the same result is not accomplished by indirection.

It is claimed that at the most the insured merely indicated an intention that the beneficiaries be reimbursed out of the estate. It may be conceded that such a wish, so expressed, would impose no liability to respond. But that is not the case here presented. The plaintiff's position is that as against the estate Leclerc never took the insurance from the beneficiaries. The estate is called upon to pay, not in the fulfillment of an unenforceable promise, but in restitution of that which never belonged to the estate.

It is not a case of disappointed beneficiaries claiming compensation from the estate, but of the assertion of an equitable right to recapture a fund which, as between the estate and the beneficiaries, is the property of the latter.

A right of present enjoyment accrued to the beneficiaries upon the death of the insured. That right extended to the entire sum due under the policies. It had never been cut down in amount. The only incumbrance upon it was a pledge as collateral for a debt of the insured. Collateral means secondary or subsidiary. Such security is to be resorted to only in the event that the pledgor fails to perform the principal contract. A pledge as collateral security *ex vi termini* excludes the idea that the thing pledged is designed as the primary source from which payment is to be made. And when, as in this instance, the pledge was "as additional collateral security" the idea of primary appropriation to the designated use is yet more clearly negatived. Further and well nigh conclusive evidence that the purpose of the insured in making the pledge was thus limited is found in his declaration to the insurer, when changing the designated beneficiary in one of the policies from his wife to his daughters, that it was his wish that the proceeds of the policy be paid to them "if and when the collateral assignment . . . is released." The insured would have expressed the same idea if he had said, "All of this insurance is the property of the named beneficiaries, subject only to the pledge as security for the bank debt."

The case is barren of any evidence of an intent on the part of Leclerc to assign any part of these policies for the benefit of his estate. Unless he did so assign them, the defendant has no standing.

By the provision of the statute (P. L., c. 277, s. 2), as between the estate and the named beneficiaries, the insurance fund was the property of the latter. The estate owed a debt to the bank. The beneficiaries did not owe the debt, and they owned a right to the whole of the insurance, subject to any liens upon it. This right is not to be minimized by calling the interest contingent throughout the life of the insured. The statute provides otherwise. As between these parties the plaintiff has been given as great rights as an innocent purchaser for value. A second pledge of the policies by the assured for another debt of his would have given the subsequent pledgee a right to subrogation. *Weld* v. *Sabin,* 20 N. H. 533. The rights of the plaintiff are not less than those of such pledgee.

A fundamental error in the defendant's argument is the assumption that the assignment as collateral was an extinguishment, *pro tanto,*

of the beneficiaries' rights. It was not that, but only an encumbrance on those rights. By force of the statute they are superior to the rights of his estate and creditors. And this statutory definition of the declared beneficiary's rights is not merely a rule to determine their relative positions at and after the death of the insured. It applies to and governs relations from the time of the inception of the beneficiaries' title through designation by the insured. It was so treated and applied in *Smith* v. *Bullard*, 61 N. H. 381, which, as before stated, was a case where by the terms of the contract of insurance the insured had the right to change the beneficiary.

Much has been made in argument of the alleged lack of right in the beneficiaries during the continuance of the power to designate new ones. If it were conceded that such arguments were sound, an issue would then be presented as to the relative rights of the parties as they accrued upon the death of the insured. That the beneficiaries then had a vested right to the whole insurance, if unincumbered, is evident, and is not disputed. By the statute that right was superior to the rights of general creditors. Those creditors seek to hold the fund in the administrator's hands by the application of the doctrine of marshalling assets.

It is the rule laid down in the authorities that marshalling can be had only as between secured creditors, that "an unsecured creditor cannot assert the equity to marshall assets." 18 R. C. L. 458. If this theory were to be followed a question would be presented as to whether the defendant could have relief upon this ground, whether the creditors of the estate have anything in the nature of a lien upon the specific real estate involved in these transactions. The rule above stated seems to be a narrow one, based upon rather technical reasons. It is not necessary to consider whether it should be adopted, or whether it is applicable to the present situation. Assuming that the defendant is in a position to assert a right to marshalling as far as the nature of the claims he represents is concerned, the question to be considered is whether occasion for such relief is shown. The bank having two funds to look to and the general creditors but one, they assert the right to compel the bank to take its pay from the fund not available to them.

The statute is the conclusive answer to the claim thus made. As to the insurance, the beneficiaries' rights are superior to those of the creditors. In the language of the statute, the beneficiaries hold the insurance "against the claims of the creditors or representatives of the party effecting the same." P. L., *c.* 277, *s.* 2. The assertion of

a right to a marshalling of assets is a claim of right as to the insurance. Something beyond the mere title of the bank is required in order to invoke such a decree. In the absence of the indirect claim of the defendant to the insurance, the court would have no power to dictate to the bank a choice between securities in favor of the defendant. A right to demand that property shall be so applied as to enable a party to get value from such transaction, either directly or indirectly, is a claim of right in such property. In a very practical sense the defendant here seeks to assert a claim upon the insurance. This the statute forbids.

It would be only upon the hypothesis that the act of the insured, in pledging the policies to the bank, took from the title of the beneficiaries something to be used for the benefit of his estate or his general creditors, that any claim to a right to have the assets marshalled could be sustained. To say that the beneficiaries are mere donees, whose rights are inferior to those of the decedent's creditors, would be to ignore the statute, as applied in *Smith* v. *Bullard*, 61 N. H. 381.

It is said that the policies were the property of the decedent, which he duly pledged for his debt, and that the rights of the beneficiaries, being subordinate to his rights, are not to be considered as those of a third party, as against the claim of the estate that the assets are marshalled. The difficulty here, as with much of the defendant's argument, is in the assumption that the assured had property rights in the policies, which could be reached by creditors, independently of action by him making the insurance so applicable.

And it may be added that marshalling is never ordered to the prejudice of a third party having equal equity. The statute having made the claims of the beneficiaries superior to those of general creditors, it is clear that this rule forbids the application of marshalling as against the former and in favor of the latter.

It is said that if the policies had been sold by the bank at pledgee's sale in Leclerc's lifetime the beneficiaries would have had no claim against him or against the mortgage security. Hence, it is argued, since they would have had no right against him because of such proceedings in his lifetime, they can have none against his estate for like transactions after his death. But in the absence of some further exercise of the power of disposal by him the beneficiaries would have had the same standing they have today. If he refrained from changing the beneficiaries, or exercising any of the powers of surrender or conversion given by the policies, their right to be protected in every way would be recognized and enforced.

Of course their recovery, during his lifetime, would be on the basis of the then provable value of their right; and the fact that it was defeasible would be an element in the determination of amount. *Salinger* v. *Salinger,* 69 N. H. 589; *Wright* v. *Noyes,* 80 N. H. 172. But if such a proceeding brought in his lifetime were not tried until after his death, that feature would not be present, and they would be entitled to the same amount as in this proceeding. Apart from such standing as the statute gives them as against the representatives of the insured (P. L., c. 277, s. 2), the supposed case and the present one would be parallel.

In such a proceeding for subrogation in the lifetime of the insured the crucial issue would be the same as it is here. How far did the insured transfer title to the insurance by the pledge to the bank? As to the bank, or its vendee standing in its right, the transfer was complete. The vendee would own the right to receive seventy-seven hundred odd dollars of the insurance at Leclerc's death. Could the beneficiaries recover from the insured the present value of their right in that item? That depends upon whether, as between him and them, it was his duty to pay the debt, or otherwise provide for the release of the policies. If he owed them that duty they could recover; and if he did not they would be without remedy.

Did he pledge his property or theirs? Did he exercise a right to make the property his, thus far, or merely a power to dispose of theirs? If the latter was what he did, their right would be clear. But if the former course was taken, it does not necessarily follow that he would owe them no duty. There would still be a further inquiry to answer, as suggested above. How much of the title did he appropriate? If what he did evidences a purpose to make the insurance his own only as far as to furnish security to the bank, leaving the title in every other respect perfect (though defeasible) in the beneficiaries, the duty to protect the security would still be owed to them, and they could recover. It would be no answer to their claim to say that their title came by gift from him. " . . . for what it was worth it was a completed gift." *Burns* v. *Nolette,* 83 N. H. 489, 492.

What has already been said as to the state of the title as against the administrator applies to this supposed situation. Leclerc intended to do no more than what was necessary to give the bank security. It was his purpose to leave the beneficiaries protected in every way consistent with that end. The chance of ultimate and irretrievable loss if the real estate security proved insufficient and the debtor was unable to pay was imposed upon the beneficiaries. That much was

taken from their title; but the right to still hold the insurance, subject only to the pledge for his debt, remained theirs.

He made their property his only to the extent of making his pledge thereof to the bank a lawful transaction, as against them. He took nothing for himself beyond that. His only title was that the property was properly pledged for his debt. That advantage to himself he took, and no more. He did not undertake to divest himself of the duty, as between himself and others who held interests in property pledged for his debt, to see to it that the debt was paid and their interests set free. As between the beneficiaries and the bank the insurance was duly pledged. But as between him and them the insurance was still all theirs.

This conclusion does no wrong to the estate or to its general creditors. It would do none to the insured, if the developments had been as just supposed. Neither they nor he had any more rights in the insurance than he elected that they should have. The insured had options to reduce or destroy the beneficiaries' interests. Until he exercised those powers the beneficiaries had rights capable of enforcement. Electing as he did to leave those rights in full effect as against him, he also chose to submit to whatever liability the existence of such rights imposed.

If the insured had pledged the policies as collateral security for the debt of A, no one would doubt the existence of the duty of A to pay the debt and release the collateral. The right of the beneficiaries against A, if the collateral were appropriated by the pledgee to the payment of A's debt, would be evident. The legal situation is not altered by the fact that the holder of the power executed it in his own favor.

Because the insured could so easily make the property his, there is a tendency to look upon any of his dealings with the policy as having that effect. But the legal situation demands action to that end. Such action would effect a change in existing rights under the policy. It can no more be inferred without proof than a transfer to some third party. *Weston* v. *Society*, 79 N. H. 245.

As before stated, these conclusions may run counter to the apparent weight of authority, although the exact issue here presented does not appear to have received judicial consideration. But in view of the underlying purpose for which life insurance is generally effected, it appears that the sounder view is that designated beneficiaries have substantial rights. Dealings with policies over the destiny of which the insured retains control are not to be looked upon as pure matters

of business between the insured and members of his family designated as beneficiaries.

It has been said that in these cases transfers and attempted transfers are to be dealt with on much the same basis as wills. The evident intent of the actor is to be given effect. 14 R. C. L. 1371. Looking at these transactions in this way, the conclusion is not doubtful. The insured never intended to take any of this insurance from the designated beneficiaries for the benefit of his estate or of his general creditors.

Upon filing a bill in equity as an amendment the plaintiff will be entitled to a decree for $7,762.94, with interest from the date of demand.

*Case discharged.*

All concurred.