June 23, 1942. The Opinion of the Court was delivered by
On March 24, 1926, D.C. Scott, Jr., obtained a loan of $3,500.00 from Jefferson Standard Life Insurance Company, evidenced by his note, and secured by a mortgage on some lots owned by him in the Town of Kingstree. He took out a policy of $3,500.00 with the insurance company and *Page 382 
pursuant to the terms of the mortgage assigned it to the company.
A similar transaction between Mr. Scott and the insurance company took place in October, 1927, involving a loan of $2,000.00 secured by another real estate mortgage, and a life insurance policy in the sum of $2,500.00 was assigned to the company. The facts surrounding the two transactions are substantially the same.
Mr. Scott was unmarried at the times the loans were made, and his estate was named as beneficiary under both policies. The right was reserved to him in both policies to change the beneficiary at any time. Thereafter, Mr. Scott married, his wife being the appellant, Mrs. Harriet T. Scott. and on March 3, 1932, he had her named as beneficiary, and a notation of the change was made by the company on the back of the policies, subject to the assignments. No further change of beneficiary was ever made.
Mr. and Mrs. Scott became estranged, and on November 17, 1934, he executed a will leaving nothing to her, but giving all of his property, both real and personal, to his nieces and nephews.
In the year 1937, the mortgages being in default, the insurance company began foreclosure proceedings, and these suits were pending at the time of the death of Mr. Scott, which occurred on June 16, 1939.
W.W. Boddie, Jr., qualified as administrator cum testamentoannexo of the will, and thereafter began this proceeding in one of the original actions. In his petition he prayed that the insurance company be required to apply the proceeds of the insurance policy to the payment of the balance due on the mortgage debt, to mark the mortgage satisfied, and surrender it for cancellation. It was subsequently agreed that the order of Court should apply to both of the transactions, although the petition referred to the 1927 loan only; and so this opinion covers both policies. *Page 383 
Mrs. Scott was not at first made a party to the proceedings, and the insurance company in its original return prayed that she be brought in. Upon appeal from an order of his Honor, Judge Philip H. Stoll, this Court determined that she should be made a party. 197 S.C. 251,15 S.E.2d 122. This was done, and in her return she alleged that immediately upon the death of Mr. Scott the proceeds of the life insurance policy vested in her absolutely as beneficiary, and as it was assigned to the company only as additional and collateral security to the mortgage indebtedness of Mr. Scott, the premises covered by the mortgage are first responsible for the payment of the debt, and that she is entitled to the full proceeds of the policy without any deduction whatsoever on account of the mortgage indebtedness, except as to any portion remaining unpaid after applying to it the entire proceeds derived from the mortgaged premises.
The insurance company, in its present return, alleged that it is ready and willing to make proper application of the proceeds of the policies, but that the insurance is claimed both by Mrs. Scott and by the Boddie children, and prayed that its rights and interests under the mortgages and assignments of insurance be fully protected by the Court, and that the Court direct it to make such application of the proceeds of the insurance as shall be legal and as shall protect its rights.
The case was heard by his Honor, Judge L.D. Lide, presiding in the Third Circuit, and by his decree he ordered that the face amount of the insurance policies be applied to the payment of the indebtedness represented by the notes of Mr. Scott to the company, both secured by mortgages of real estate, and that the mortgages be satisfied and surrendered for cancellation if the amount of the insurance was sufficient to pay the indebtedness in full.
Mrs. Harriet T. Scott appeals from this decree. In the decree it was held that when Mr. Scott took out the insurance policies and assigned them to the company as additional *Page 384 
collateral to the indebtedness, he had in mind that in the event of his death the proceeds of the insurance would pay the mortgage debt, and would leave the real estate free of indebtedness, thus saving the expenses incident to foreclosure proceedings and the possibility of a deficiency judgment.
In a group of the exceptions the appellant contends that there was error in this finding as to the intention of Mr. Scott.
The cause was heard by Judge Lide on the pleadings, the notes, mortgages, insurance policies, assignments, an affidavit of the attorney for the administrator, and a certificate of the Clerk of Court. No oral testimony was taken.
We think that there was no direct evidence before the Court to support the finding as to the intention of Mr. Scott. There were no letters in evidence, nor was there any testimony of the insurance agents as to what took place at the time the loans were made. The only real evidence as to his reason for assigning the policies is the provision in the mortgages requiring him to do so. No doubt the company desired the additional protection for the indebtedness due it, and made the taking of the insurance a condition to the granting of the loan. There is nothing to show that the thought originated with Mr. Scott. The assignment was on a form prepared by the company, and this transaction was doubtless handled in the lender's customary manner.
Any inference as to Mr. Scott's intention which might be drawn-from the fact that the debt was secured by both the real estate and the insurance policies is, in our opinion, overcome by the positive evidence that he later made his wife the beneficiary. While it is true that her rights as beneficiary were expressly made subject to the assignments, we think that all of the written evidence in the case, taken as a whole, shows an intention on his part to have the insurance proceeds go to her subject only to the rights of the company in the event that there should be a deficiency over *Page 385 
and above the proceeds of sale of the real estate, rather than a desire for her to have only what might be left over from the insurance proceeds after paying the entire debt from that fund.
It is true that the petition alleges that the policies were taken out for the specific purpose of paying the indebtedness from the proceeds in the event of his death; but this is denied by the return of Mrs. Scott, and no testimony was offered by the administrator in support of his allegation.
The act of Mr. Scott after his marriage in having his wife named as beneficiary shows that he intended for her to be benefited by the proceeds, otherwise he would have left it as it was. When he later made his will he did not change the beneficiary, as he had a right to do, so as to substitute his nieces and nephews, the devisees under his will. It would seem that he would have taken that action if he had desired that the proceeds of the policies should be applied to the payment of the mortgage indebtedness, so as to free the premises from debt for the benefit of the devisees. Further, when the foreclosure proceedings were begun against him and he realized the likelihood of the land being sold in foreclosure and eventually lost to his nieces and nephews, he took no step to compensate them for this by changing the beneficiary from his wife to them, or to his estate.
The course followed by Mr. Scott, we think, indicates that it was his intention that his wife should receive the proceeds of the insurance, and his nieces and nephews should have the land subject to the mortgage indebtedness, if not paid during his lifetime; and to give the additional security to the company without impairing the interest of his wife as beneficiary beyond what was required to protect his loans.
Our conclusion is that the learned Circuit Judge was in error in his finding as to the intention of Mr. Scott.
Under another group of the exceptions the appellant contends that as the policies were assigned only as additional collateral to the mortgage indebtedness, the proceeds of the *Page 386 
policies payable to the beneficiary should not be applied to the payment of the mortgage debt before the mortgage security is exhausted.
The notes given by Mr. Scott contained the following provision: "This note is secured by a mortgage of even date conveying real estate in Williamsburg County, South Carolina."
The mortgage provided that the mortgagor should procure a policy of life insurance and should pay the premiums, "and as additional collateral for the indebtedness hereunder secured, will keep said policy or policies constantly assigned to said mortgagee in accordance with the terms of a form of assignment to be furnished by said mortgagee."
The assignments stated that the policies were assigned to the insurance company "with all the rights and powers of the insured and the beneficiary conferred by said policy." It was further provided that "this assignment is made in order to secure a certain note which was given by D.C. Scott, Jr., to said Jefferson Standard Life Insurance Company, in consideration of a loan from said company, said note being also secured by mortgage or deed of trust upon real estate or other securities; and this assignment is a definite transfer of the cash or loan value of said policy and all other rights or options to which the insured or beneficiary is entitled under said policy." It was further provided that "upon the maturity of said policy or death of insured the entire proceeds of the same, or so much thereof as may be necessary, may be applied to the payment of said indebtedness, and the surplus, if any, paid to the undersigned assignor or beneficiary."
The policies provided, as we have seen, for a change of beneficiary at any time at the request of the insured. Such change was made, the policy showing the following endorsements: "Beneficiary changed, see endorsement, March 3, 1932," and "Date endorsed Mar-3-32. Beneficiary: Harriet *Page 387 
T. Scott, wife (subject to assignment to the Jefferson Standard Life Ins. Co.)."
These provisions, we think, show an intention of the parties that the real estate should be the primary security for the indebtedness and the insurance proceeds the secondary security. The insurance company is not making the contest; the issue is between the beneficiary of the policies and the administrator of Mr. Scott's estate, who is also one of the nephews and devisees under the will. Neither the mortgages nor the assignments require that the proceeds be first applied to the mortgage debts. The company is proceeding with the foreclosure suit which was begun before the death of Mr. Scott.
The precise meaning of the words "additional collateral" has not been determined by any decision of this Court. The word "collateral" is defined at 14 C.J.S., Collateral, p. 1317, as follows:
"As a noun. An obligation or security attached to another to secure that other's performance; any property or right of action, which is given as security for the fulfillment of a contract or a pecuniary obligation, in addition to the principal security, a separate obligation attached to another contract to guarantee its payment. In this sense the term is used to denote a pledge of incorporeal personal property, such as corporate stock or bonds, choses in action, and the like, assigned or transferred and delivered by a debtor, or by some one for him, to a creditor as security for the payment of a debt or the fulfillment of an obligation.
"Phrases: `Collateral for indebtedness to assured,' and `pledge sufficient collateral as security.'
"As an adjective. As an adjective, the word has been defined by Webster as meaning accompanying, indirect, or subordinate; accompanying as a coordinate, or as a secondary fact, or acting as a secondary agent; additional or auxiliary; on the side, or at one side, of a subject; related to or complementary; secondary or subsidiary." *Page 388 
In the same volume, at page 1318, the following is stated as the meaning of the words "collateral security":
"A concurrent security for another debt, whether antecedent or newly created, designed to increase the means of the creditor to realize the principal which it is given to secure; a separate obligation attached to another contract to guarantee its performance; security for the fulfillment of a contract or a pecuniary obligation in addition to the principal security; some security additional to the personal obligations of the borrower.
"The term necessarily implies the transfer to the creditor of an interest in some property or lien on property, or obligation which funishes a security in addition to the responsibility of the debtor. It is said to refer to personal property exclusively, and to be properly and commonly applied to incorporeal property such as stocks, bonds, and choses in action generally, as distinguished from pledges of corporeal chattels.
"The phrase has no technical significance distinct from the meaning of the term `collateral' where the latter is used in the sense of an additional obligation or security."
And at 21 R.C.L., 631, we find: "The use of the term `collateral security' when the debtor transfers to his creditor an article of value or an evidence of debt, is intended to express that it is not received in payment of the principal debt, and that it is not an additional right to which the creditor is absolutely entitled. It is merely a concurrent security for another debt, whether antecedent or newly created, and is designed to increase the means of the creditor to realize the principal which it is given to secure. It is subsidiary to the principal debt; running parallel with it, collateral to it; and when collected is to go to the credit of the principal debt, or if the principal debt be paid off, the debtor is entitled to the restoration of the collateral security."
1 C.J.S., Additional, p. 1458, gives the meaning of the word "additional": "The word `additional' is in common *Page 389 
use, and its meaning is very well understood by people generally, as being something that is added to or put onto a thing already in existence. It embraces the idea of joining or uniting one thing to another so as to form an aggregate; but it has also been said that the word does not serve to amalgamate two things to which it is applied into a single whole but rather relates to them as separate entities. The word has been specifically defined as: added; coming by way of addition; cumulative; further; given with or joined to some other; increased; joined or united with; supplemental."
It would appear, then, that "additional collateral" means that other securities or choses in action have been added to that already pledged. It does not appear that the "additional collateral" or "additional collateral securities" are necessarily or in every case to be secondary or subordinate to the original collateral or securities. Both are collateral to the main debt evidenced by the note. We do not think that it may be said that in all cases "additional collateral" means that the original collateral security is the primary source of payment and that the additional securities form the secondary source. In some cases the additional securities may be intended to rank equally with the original securities; in other instances the words may be used to mean that the additional securities are to be secondary and subordinate to the original securities.
Not having a certain and fixed meaning in all cases, as to the relative status of the original and the additional collateral, the significance of the phrase as used here must be determined by the facts of the present case, taking into consideration the various instruments as a whole, so as to ascertain from them the intention of Mr. Scott, and to determine the equities of the parties.
In this case the terms of the notes, the mortgages, the assignments, the provisions for a change of beneficiary, and the actual changes, taken together, convince us that here it was intended that the real estate should be primary security and the insurance proceeds the secondary security. The note *Page 390 
says that it is secured by a mortgage of real estate, the mortgage states that the insurance will be assigned as additional collateral, the assignment provides that the proceeds may be applied to the debt, the insured actually did exercise his right to change the beneficiary from his estate to his wife, and let it so stand.
If it had been the intention of the company and of Mr. Scott that the proceeds of the policies should be resorted to first to pay the note, that could easily have been provided for in express words in the assignment. The insurance company evidently did not so regard it, as it did not apply the proceeds to the debt.
During the lifetime of Mr. Scott the interest of the beneficiary under the policy was a mere expectancy, since the insured had the right to change the beneficiary at his pleasure. No further change having been made during his lifetime, upon his death the interest of Mrs. Scott ceased to be contingent, and became a vested interest. Shulerv. Equitable Society, 184 S.C. 485, 193 S.E., 46; Bost v.Volunteer Co., 114 S.C. 405, 103 S.E., 771, 37 C.J., 580.
At that time the situation was that Mrs. Scott had an absolute right to the proceeds of the insurance, subject only to the assignment to the company, which held it as additional and secondary collateral to the real estate mortgages. The insurance company was an assignee, not a beneficiary. At the same moment the land vested in the devisees, subject to the payment of the mortgage.
A very interesting discussion of the respective rights of the assignee, the beneficiary, and the estate of the insured appears at 83 A.L.R., 62, where the case of Barbin v.Moore, 85 N.H. 362, 159 A., 409, is fully annotated. Among other cases discussed are Russell v. Owen, 203 N.C. 262, 165, S.E., 687, and Farracy v. Perry, Tex. Civ. App., 12 S.W.2d 651. In some of these cases the insurance company went ahead and paid the proceeds of the insurance to the mortgagee, and the question arose upon a *Page 391 
claim of the beneficiary to subrogation to the rights of the creditor in the mortgage security, and it was held, in effect, that the real estate was the primary security for the indebtedness. While the facts in the instant case are different, we think that the principle declared in these cases is applicable.
The property of a deceased person is liable for the payment of his debts, and such debts must be paid before the heirs or devisees are entitled to it.
To carry out the views of the respondent administrator would, we think, result in taking the proceeds of insurance payable to a designated beneficiary and using it for the payment of the debts of the deceased for the benefit of his devisees. It would, in effect, amount to a change of beneficiary from the wife to the estate of Mr. Scott, though he himself had changed the beneficiary from his estate to his wife. It would set aside, to all intents and purposes, his act in making his wife the beneficiary.
These exceptions, we think should be sustained.
We think that the mortgaged premises should be sold in foreclosure and the proceeds of such sale applied to the indebtedness due to the insurance company. If the indebtedness is thereby paid in full, the proceeds of the insurance policies should be paid over to Mrs. Harriet T. Scott, the appellant. If the debt is not paid in full from the proceeds of the sale of the land, such deficiency should be paid from the insurance, and the balance, if any, should go to Mrs. Scott.
Such foreclosure sale should, of course, await the final outcome of the pending foreclosure actions and the determination of the issues raised by the defenses and counterclaims contained in the answers, and the finding of the amount, if any, due upon the mortgage debts.
The appellant also contends that there was error on the part of the Circuit Judge in considering and giving weight to an affidavit of the administrator's attorney, and a certificate *Page 392 
of the Clerk of Court, for the reason that these were not filed at the hearing.
It appears that these papers were sent to Judge Lide after the hearing of the case before him, and that they showed that in separate actions brought by Mrs. Scott against the insurance company on account of the double indemnity provisions of the policies in question, the suits were settled by the payment to her of $4,000.00. These causes did not involve the face amount of the policies, and apparently the company felt that it was amply secured by the face amount, although, of course, the double indemnity as well as the face amount of the policies was included in the assignment.
This was an equity suit, coming before the Court upon a rule to show cause. In such cases the evidence is often presented by affidavits or documents. The affidavit and the certificate here referred to public records. No contention is made that the facts stated were incorrect. Without doubt the appellant had an opportunity to reply to them, if she had so desired, or to request an, opportunity for further argument.
Judge Lide evidently regarded the testimony as irrelevant to the main issues involved, since no reference whatsoever to the double indemnity nor the other action brought by Mrs. Scott appears in the pleadings, and he considered the affidavit and certificate for a very limited purpose only.
In his decree he said: "These suits did not involve the face amounts of the policies, and counsel for Mrs. Scott contends that this matter is hence irrelevant to the issue before the Court. It does, however, show that Mrs. Scott acquired valuable rights as beneficiary under the policies, even if the face amounts thereof are applied to the indebtedness of Mr. Scott."
We see no error here, and do not think that the appellant could have been prejudiced by the fact that the evidence was presented, and was considered by the Circuit Judge to the very limited extent mentioned by him in his decree. *Page 393 
The decree and judgment appealed from are reversed, and the cause is remanded to the Circuit Court for further proceedings in accordance with the views herein expressed.
MR. CHIEF JUSTICE BONHAM and MESSRS. ASSOCIATE JUSTICES FISHBURNE and STUKES concur.
CIRCUIT JUDGE PHILIP H. STOLL, ACTING ASSOCIATE JUSTICE, did not participate.