BLAIR ET AL. *v.* BAKER ET AL.

[No. 11, October Term, 1950.]

*Decided November 3, 1950.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, HENDERSON, and MARKELL, JJ.

*Edward Pierson,* with whom were *Leon H. A. Pierson, Pierson & Pierson* and *Blair & Blair* on the brief, for the appellants.

*Nathan Patz,* with whom was *Jack L. Grossman* on the brief, for the appellee Daisy E. Baker.

MARKELL, J., delivered the opinion of the Court.

This is an appeal by executors from a decree that a debt of their testator, secured by an assignment of four life insurance policies, be paid out of three policies payable to his estate and not out of the fourth, payable to a named beneficiary.

Richard M. Baker died on April 9, 1949. He left no widow or children. His wife had died in October, 1946.

By his will, dated April 6, 1949, he directed payment of all his just debts and funeral expenses and left twenty pecuniary legacies, aggregating $9,000, and specific legacies of furniture and silver, and left the residue to Daisy E. Baker, who was not related to him. He left four life insurance policies, with four different companies, three payable to his estate. Upon his death the aggregate amount payable on the three was $5,883.14. On his fourth policy with the Northwestern $4,900.85 was payable. Whether under the policies, or any of them, the right was reserved to change the beneficiary does not appear. Apparently the Northwestern policy provided for lapse of the rights of a beneficiary upon death during the life of the insured.

About 1941 he became indebted to the Equitable Trust Company in the sum of $5,176, which was secured by assignments, dated December 27, 1941, of the four policies, and also two other policies, as collateral. The two other policies were later surrendered for cash, and the indebtedness was thereby reduced to $3,498.80, the amount owing at his death. His wife had been named as beneficiary of the Northwestern policy. He and his wife, as beneficiary, signed the assignment of that policy, giving plenary power to the Equitable to collect the policy and, after payment of the debt, to pay the balance to the persons entitled under the policy, but not directing that the debt be so paid and not paid out of other collateral or the debtor's other estate. On January 28, 1947 he signed a designation of Daisy E. Baker as beneficiary under the Northwestern policy. This assignment provided, *inter alia*: "The rights of any payee herein designated shall be subject and subordinate to any indebtedness on account of said policy in favor of the Company, *and subject to the interest acquired by the Equitable Trust Co. under assignment dated December 27, 1941.*" The words italicized are typewritten, the others are part of a printed form.

Mr. Baker left a piece of Baltimore real estate, which was appraised at $7,500 and in June, 1949 was sold for

$8,000. His estate received $2,913 from the City of Baltimore Employee's Retirement System. If the Equitable debt is paid out of the Northwestern policy the estate will be sufficient to pay all legacies in full; otherwise not. The amount of the residue or deficiency (as the case may be) has not been determined. Since the beneficiary is also the residuary legatee, the net amount in dispute cannot exceed $3,498.80. Apparently it may be much less.

All four insurance companies promptly sent checks to the joint order of the Equitable and the estate or the beneficiary, as the case may be. Through some timidity or obstinacy none of these checks has been collected, the Equitable has not been paid, and thus $10,783.-99 of insurance money has been idle, and interest has been accumulating on the debt of $3,498.80 to the Equitable, though that sum is the maximum ever possibly in dispute—and could safely have been kept in a savings bank.

The executors proffered testimony of one of them "to show the testator's proclaimed purpose in executing his last will." The proffered testimony was of course excluded. A prior will, dated February 17, 1947, was also excluded on objection by the beneficiary. For present purposes the prior will was not materially different from the last will. It contained sixteen pecuniary legacies, aggregating $10,000.

The lower court held that the estate is primarily liable for the debt, because there appears no such clear intent of the testator as would overrule the rule of law ordinarily applicable.

The executors contend that the legal effect of the assignment to the Equitable is to entitle the beneficiary to only that part of the policy proceeds in excess of the debt, and that the instrument designating the beneficiary indicates the same intent. Neither the assignment nor the designation says so. Nor does the will—if that is material. The assignment and the designation contain no such direction, and the will (like the prior

will executed soon after the designation) directs payment of "all my just debts".

The executors say the typewritten words in the designation must be construed as limiting the beneficiary's interest to the excess over the debt, because otherwise they would only restate the legal effect of the assignment and would be superfluous. They say that, if possible, a writing should be construed so as to give effect to every word. This is an ingenious perversion of a rule of construction. Every word should be given meaning and effect, but not an effect different from the rest of the writing, or a meaning different from its natural meaning, merely in order to be different and to avoid superfluity. As Mr. Justice Frankfurter says, sometimes "the redundant becomes the necessary". *State of Maryland v. Baltimore Radio Show,* 338 U. S. 912, 919, 70 S. Ct. 252, 255. This is no less true of an insurance policy than it is of a judicial opinion. No stretch of imagination is required to find reasons why an insurance company might prefer a specific mention of the Equitable assignment, on the face of the designation, to general words in the printed form.

In the absence of fraud, and subject to any reserved powers of revocation, change, assignment and the like, a beneficiary is the owner of a life insurance policy, whether the designation of the beneficiary amounts to a gift or is made for a valuable consideration, *e,g.,* designation of a creditor. In Maryland this general principle has been carried far in practice, notwithstanding the unstable character of ownership which is at any moment subject to destruction by the exercise of some reserved power of the insured. *Bullen v. Safe Deposit & Trust Co.,* 177 Md. 271, 9 A. 2d 581. The instant case presents no question of power, only a question of intent. Whichever was the insured's intent, he had power to carry it out by expressing it.

When the property of a surety or co-debtor, security for the debt of a principal or co-debtor, is taken in satisfaction of the debt, the owner is entitled to exoneration,

contribution or subrogation to the rights of the creditor against the principal or co-debtor or other collateral which is his. *Cunningham v. Cunningham,* 158 Md. 372, 148 A. 444. This principle is not limited to the relationships mentioned but is applicable broadly, if not universally, when the property of one is taken for the debt of another, though the owner may not be personally liable, as surety or co-debtor, for the debt.

In *Barbin v. Moore,* 85 N. H. 362, 159 A. 409, it was held, in an opinion which discusses at length principles and authorities, that the beneficiaries (infant children of the insured) under a life insurance policy assigned to a bank as additional collateral for a debt of the insured, were entitled, even as against creditors of the insolvent estate of the debtor, to be subrogated to the rights of the bank against mortgaged property of the debtor, which constituted the original security. This result, as against creditors, was based on a New Hampshire statute. On the question of intent and construction, the case is the same as the instant case. In the course of the opinion, the court said, "Not only could the insured have provided that the insurance should be used to pay the debt existing at his decease by making the bank the designated beneficiary to the extent of its claim against the estate, but a mere direction in the pledge to resort to the insurance first would have answered the purpose of expressing the alleged design. But one searches in vain for any word or act indicating such purpose. * * * A fundamental error in the defendant's argument is the assumption that the assignment as collateral was an extinguishment, *pro tanto,* of the beneficiaries' rights. It was not that, but only an incumbrance on those rights." 85 N. H. 373, 374-375, 159 A. 415. In *Smith et al. v. Coleman et al.,* 184 Va. 259, 270, 35 S. E. 2d 107, 112, another similar case, the court said, "The right of the insured to the contract of insurance was absolute. He could have defeated the expectancy of the beneficiary in many ways. He could have exercised the power of appointment and named another beneficiary; he could have surrendered the

policy for its then cash value; he could have designated the pledgee, the bank, as beneficiary *pro tanto;* or he could have made the proceeds of the insurance policy a primary fund out of which to discharge his indebtedness. The insured exercised none of these rights. He simply assigned the policy with other assets owned by him as collateral security to pay an obligation for which he was otherwise primarily bound. 'Collateral means secondary or subsidiary. Such security is to be resorted to only in the event that the pledgor fails to perform the principal contract. A pledge as collateral security *ex vi termini* excludes the idea that the thing pledged is designed as the primary source from which payment is to be made.' *Barbin v. Moore,* 85 N. H. 362, 159 A. 409, 415, 83 A. L. R. 62, 73." See also *Russell v. Owen,* 203 N. C. 262, 165 S. E. 687.

The executors rely on *Matter of Kelley's Estate,* 251 App. Div. (N. Y.) 847, 296 N. Y. S. 923, 924 a short memorandum opinion in which a decree below was affirmed "on the ground that appellant had no vested, irrevocable interest in the policy of her husband, Charles E. Kelley, deceased, and that it was not her property which was applied in satisfaction of her husband's debt. When the husband executed his certificate on August 15, 1932, revoking the designation of his wife as the absolute beneficiary and redesignating her as beneficiary subject to the assignment to the Manufacturers Trust Company, he thereby diminished her interest in the policy *pro tanto* and, in effect, constituted the trust company the primary beneficiary to the extent necessary to satisfy its loan to him and appellant, the secondary beneficiary, as to any residue which may remain." This case has never been cited in the Court of Appeals, though permission to appeal was denied by that court. 276 N. Y. 689. It has been distinguished by lower courts, which have reached conclusions in accord with the cases above cited, on a fuller statement of the facts, principally on the ground that it was a claim of subrogation by a beneficiary against other collateral, which originally had been the property

of the insured, but had been sold by him to a third person. In the circumstances it is not necessary to consider whether the opinion is consistent with Maryland law as to the rights of a beneficiary or to stress the circumstances of the designation in question. Other cases have construed particular assignments and designations of beneficiaries as limiting the interest of the beneficiary to the excess over the debt, but we have found no case so construing the usual instruments involved in the instant case.

In all or most of the cases above cited the assignment was made after the designation of the beneficiary. In *Barbin v. Moore, supra,* after the assignment the previous designation of one beneficiary was changed by designation of another. In the instant case the Northwestern policy became payable to the estate at the wife's death and until designation of the other beneficiary. We see no difference in meaning or effect of the designation and the assignment whether the one or the other was made first.

In the instant case the question presented is in its simplest form. The estate is solvent; no rights of creditors are involved. The beneficiary seeks, not subrogation as against general assets of the estate, but exoneration as against other insurance payable to the estate, assigned to secure the same debt. Even if the executors' basic contention were sound, it would seem that at most they would only be entitled to have the debt paid *pro rata* out of all four policies—to which at first they asked the beneficiary to consent. They are not entitled to this because the beneficiary is entitled to have the insured's debt paid out of the insured's assigned collateral, and not out of hers.

*Decree affirmed, with costs.*