In re Michael MONAHAN and, Leisha Monahan, Debtors.

In re George Edward COLE Jr. and Elizabeth Jane Cole, Debtors.

In re Alfred P. MURPHY, Debtor.

Bankruptcy Nos. 92–11521–JEY, 93–11781–JEY and 94–10521–JEY.

United States Bankruptcy Court, D. New Hampshire.

Aug. 26, 1994.

Karen J. Levitt, Lowell, MA, Jeffery Schreiber, Danvers, MA, for debtors.

Dennis Bezanson, Chapter 7 Trustee, Manchester, NH.

Geraldine Karonis, Manchester, NH, U.S. Trustee.

## INDEX

INTRODUCTION ............................................... 711–712
 Monahan Facts/Context .......................................... 712–713
 Cole Facts/Context ............................................ 713–714
 Murphy Facts/Context ......................................... 714
GENERAL DISCUSSION ........................................ 714–717
 Cash Surrender Value .......................................... 717–719
 Death Proceeds ............................................... 719–721
CONCLUSION ................................................ 721

### *MEMORANDUM OPINION*

JAMES E. YACOS, Bankruptcy Judge.

### *INTRODUCTION*

"Great cases like hard cases make bad law. For great cases are called great, not by reason of their real importance in shaping the law of the future, but because of some accident of immediate overwhelming interest which appeals to the feelings and distorts the judgment. These immediate interests exercise a kind of hydraulic pressure which make what previously was clear seem doubtful, and before which even well settled principles of law will bend. What we have to do in this case is to find the meaning of some not very difficult words."

*Northern Securities Co. v. United States,* 193 U.S. 197, 400–01, 24 S.Ct. 436, 468, 48 L.Ed.

679 (1903) (dissenting opinion by Justice Holmes).

The three cases before the Court raise questions regarding the exemption of various aspects of life insurance policies in force at the time of the bankruptcy filing. All three raise questions under the New Hampshire exemption laws which have not been decided in this District before.[1] It will become apparent from the recitation of the facts that these are "hard cases" indeed. The Court has also discovered that the caselaw in this area is difficult to decipher in terms of the appropriate result under a particular state's statutory exemption provisions. The relative lack of decisions by the New Hampshire courts has compounded the difficulty. The Court accordingly has taken some time to do its own research in addition to that provided by the parties to try to assure that the decisions will not provide "bad law" in the circumstances. The procedural context and other relevant facts regarding each case will first be set down separately as follows:

### Monahan Facts/Context

Michael Monahan and Leisha Monahan, husband and wife, filed a joint chapter 7 petition in this Court on May 11, 1992. They were young parents and had a minor child, Jessica Monahan. On June 16, 1992, a little over a month after the filing, Leisha Monahan died in an automobile accident. Life insurance proceeds insuring the life of Leisha Monahan, naming the child, Jessica Monahan, as the beneficiary, were paid to Michael Monahan as guardian for the minor child.

The original bankruptcy schedules filed on May 11, 1992 (Court Doc. No. 1) did not list the life insurance policy, which was owned by the debtors jointly, and which had a cash surrender value of approximately $600 as of the date of the bankruptcy filing. Thus, there was also no claim of exemption of the

policy by the debtors at that time. The premiums paid by the debtors pre-bankruptcy kept the policy in force up to the date of the accident that claimed the life of Leisha Monahan.

The life insurance policy in question was owned by the debtors and gave the debtors the power to change the beneficiary as well as the power to surrender the policy and obtain its cash surrender value for other purposes free of any claim or restriction by the beneficiary.

At the first meeting of creditors under § 341 of the Bankruptcy Code held on July 20, 1992 the trustee discovered that the debtor Leisha Monahan was deceased and that there was a $50,000 life insurance policy on her life in effect at the time of the bankruptcy filing and at the time of the accident. The debtor, Michael Monahan, previously on July 2, 1992, had filed a motion to permit him to dismiss the bankruptcy case. (Court Doc. No. 9) That motion was heard on September 17, 1992 but was withdrawn in open Court by the debtor's attorney (Court Doc. No. 12).

On August 2, 1993 the debtors, Michael and Leisha Monahan, by their attorney, filed a "Motion to Amend Schedules B and C" to add to Schedule B(9) "Whole Life Policies (2)—Value approximately $600." (Court Doc. No. 17). The debtors also moved to amend the claim of exemptions seeking to exempt "Life Insurance Policy Cash Value $600" and also sought to exempt "Life Insurance Proceeds" with reference to the $50,000 death proceeds that were paid by the insurance company under the insurance policy.[2] The trustee filed "Trustee's Objection to Exemption" on August 27, 1993, (Court Doc. No. 19) within 30 days of the filing of the motion to amend schedules. The debtors' response to the trustee's objection to exemption was filed on September 14, 1993. (Court Doc. No. 22)

---

**1.** New Hampshire is an "opt-out" state applying its own exemptions laws in bankruptcy cases pursuant to § 522(b)(2) of the Bankruptcy Code. Neither this Court nor the New Hampshire courts have squarely decided the precise issues presented by these cases.

**2.** The debtor claimed an exemption in the cash value of the policy pursuant to N.H.Rev.Stat.Ann.

§ 511:2 and an exemption in the proceeds of the policy pursuant to N.H.Rev.Stat.Ann. § 408:2. Section 511:2 enumerates specific items of tangible personal property but makes no provision or reference to insurance policies or insurance proceeds. That statute is not relevant to the issue presented.

On October 4, 1993 the trustee also filed a "Motion for Turnover and Accounting" (Court Doc. No. 23) pursuant to §§ 105, 521(4) and § 542 of the Bankruptcy Code requesting an order directing "the debtors to account for and turnover to the trustee $50,-000 proceeds of a life insurance policy in which the debtors' minor child was named as beneficiary which policy existed as of the date of filing and the same proceeds from said policy arose upon the death of the debtor, Leisha Monahan, within 180 days after filing of the debtors' petition."

All of the issues relating to the motion to amend schedules and the claim of exemption, and the trustee's objections thereto, were heard before this Court at a hearing on October 5, 1993. After the hearing the Court entered a procedural order (Court Doc. No. 26) which directed further briefing of the legal issues before the Court and took the matter under advisement after the last brief was submitted on October 29, 1993. The trustee's motion for turnover and accounting and the debtor's objection thereto was first heard on November 4, 1993.[3]

In this case, although the debtor originally claimed an exemption in both the proceeds and cash surrender value of the policy, the debtor in his memo of law in responding to the trustee's objection to the claims of exemption agreed to remit to the trustee the $600 cash surrender value of the policy and argued only against the trustee's objection to the claim of exemption of the proceeds paid upon the death of Mrs. Monahan. (Court Doc. No. 22).

The trustee contends that at the filing of the bankruptcy petition the life insurance policy became property of the estate and the right to change the beneficiary passed from the debtor to the trustee. (Court Doc. No. 19). From these facts the trustee argues that (1) unscheduled assets and the proceeds from the same become property of the estate; and (2) even if the debtor's claim of

exemption in the death proceeds might have been allowable at the outset, the debtor's failure to list the policy until one year after the death of the insured asset precludes Mr. Monahan from doing so now.

### Cole Facts/Context

George Cole and Elizabeth Cole, husband and wife, filed a joint chapter 7 petition on June 16, 1993 in this Court (Court Doc. No. 1). Under Schedule B as item 9 the debtor listed as an asset a John Hancock Mutual Life Insurance Company policy, owned jointly by the debtors, having a current cash surrender value of $2,984.84. On the Schedule C, the debtors claimed that policy and its cash surrender value exempt under R.S.A. 408:2.

The debtors were examined at a first meeting of creditors on June 26, 1993 at which time the trustee inquired about the life insurance policy. On August 4, 1993 the trustee filed an objection to the claim of exemption (Court Doc. No. 4) with regard to the "claim of exemption in cash value of life insurance" on the grounds that there was no basis for that claim of exemption in the law.

The Court held a hearing on the trustee's objection to the claim of exemption on October 5, 1993 and directed briefing by the parties. At the hearing, the Court received into evidence a copy of the life insurance policy in question (Debtor Exhibit No. 1). The debtors filed their memorandum in support of the claim of exemption on October 18, 1993 (Court Doc. No. 13). The trustee filed his memorandum in support of his objection to the claim of exemption on October 22, 1993 (Court Doc. No. 14). The matter was then taken under advisement.

The insurance policy in question is a "family" life insurance policy that had been taken out in 1971, and was kept in force by regular payment of premiums over some 22 years prior to the bankruptcy, accounting for the

---

**3.** On October 25, 1993, the debtor filed his objection to the Motion for Turnover (Ct.Doc. No. 28). On December 29, 1993, the Court entered a procedural order referring to a hearing on November 4, 1993 on the trustee's "Motion for Turnover and Accounting" and relates that the debtor in open court agreed to continue that

matter pending the Court's decision on the exemption issue and that pending a final decision on the exemption issue the debtor Michael Monahan "will not disperse, transfer or otherwise dispose of the $50,000 of life insurance he now holds." (Ct.Doc. No. 33).

accumulated cash surrender value. The policy insures the life not only of George Cole, but also of his wife, the co-debtor in this case, and the Coles' two dependent children, ages 19 and 17. Upon Mr. Cole's death, a death benefit of $10,000 would be paid to his wife or to the children if she did not survive him. If Mrs. Cole predeceased Mr. Cole, a $2,000 benefit was payable to her husband or to the children if he did not survive her. A separate $1,000 death benefit was payable upon the death of either child.

The insured and owner of the life insurance policy was George Cole and he retained the power to change beneficiaries without restriction. This power had not been exercised at the time of the bankruptcy filing. At that time and to date all parties covered by the life insurance policy are still alive.

The question in this case accordingly is whether the debtors may keep the life insurance policy in force, without paying over to the trustee the cash surrender value for the benefit of creditors, and whether George Cole as owner of the policy may retain his power to terminate the policy and obtain the cash surrender value free not only of the named beneficiaries but also free of the trustee in bankruptcy who otherwise would assert that power to obtain the cash surrender value of the policy.

### Murphy Facts/Context

Alfred Murphy filed an individual chapter 7 petition on March 8, 1994 with this Court (Court Doc. No. 1). At Schedule B(9) he listed the following as a personal property asset:

Interests in insurance policies.

Life Insurance Policy #: 8125460

New England Mutual Life

501 Boylston Street, Boston, MA 02117

Face Amount: 24,622.00

Debtor's interest: 4,700.00

Total debt on property: 0.00

Location: In debtor's possession.

Additional information: Beneficiary: Debra A. Marion

On Schedule C the debtor claims the foregoing life insurance policy as exempt and claims "value exempt: $4,700."

The first meeting of creditors was held on April 21, 1994 and on April 29, 1994 the trustee filed an objection to the debtor's claim of exemption with regard to the life insurance policy (Court Doc. No. 11). The debtor filed a memorandum in support of the claim of exemption on July 1, 1994 (Court Doc. No. 15). The trustee filed a memorandum in support of his objection to the exemption on July 11, 1994 (Court Doc. No. 16). The dispute with regard to the exemption in this case was heard on July 11, 1994 and the Court took the matter under advisement without further briefing.

The debtor Alfred Murphy is the insured and owner of the policy in question and retains the power to change the beneficiary without restriction, or to surrender the policy and obtain its cash surrender value free of any claim by the beneficiary. The beneficiary is a woman who lives with the debtor. They are not married. The beneficiary is 38 years old and the debtor is approximately 65 years old.

The question presented in this case accordingly is similar to that presented in the Cole case discussed above, i.e., whether the debtor will retain the power to realize the cash surrender value of the policy, at his discretion, or whether the trustee succeeds to that power under the applicable law.[4]

### GENERAL DISCUSSION

As a preliminary matter, the Court in the Monahan case will allow Michael Monahan to amend his schedules to include the life insurance policy in question as an asset.[5]

---

**4.** There may be an additional question in this case as to whether Debra Marion, as the unmarried companion of the debtor, has the requisite "insurable interest" to qualify for exemption rights under New Hampshire law. See In re Mount, 50 B.R. 305, 306 (Bankr.D.N.H.1985). However, for present purposes I will assume that the New Hampshire courts would recognize the requisite insurable interest depending upon a more detailed factual evidentiary record as to the relationship between the debtor and the beneficiary.

**5.** Allowance of amendments to the schedules however does not determine the merits of any

The motion to amend with regard to assertion of claim of exemptions is not allowed. As to the former, this debtor in subsequent pleadings has withdrawn any claim of exemption in the cash surrender value. See discussion, p. 713, *supra*. As to the latter, a claim of exemption *by the debtor* in the death proceeds is legally irrelevant under the applicable law as discussed below.[6] The Court deals with the question of amendments simply to remove from this case any question of waiver by the original failure to list the insurance policy in question at the time the bankruptcy petition was filed.

Under Bankruptcy Rule 1009(a), a debtor is entitled to amend schedules as a matter of course at any time before the case is closed absent a showing of bad faith or prejudice to creditors. *Matter of Yonikus*, 996 F.2d 866, 872 (7th Cir.1993) (amendments allowed freely but with "the caveat that an amendment may be denied upon a clear and convincing showing of bad faith by the debtor or prejudice to the creditors"); *In re Williamson*, 804 F.2d 1355 (5th Cir.1986); *In re Doan*, 672 F.2d 831, 832 (11th Cir. 1982). Mere allegations of bad faith will not preclude the amendments under B.R. 1009(a). The objecting party must demonstrate the bad faith of the debtor by specific evidence. *In re Magallanes*, 96 B.R. 253, 255 (9th Cir. BAP 1988); *Matter of Brown*, 56 B.R. 954, 958 (Bankr.E.D.Mich.1986).

There is no evidence or even allegations in the *Monahan* case of bad faith in terms of an intentional concealment of the life insurance policy. The trustee found out about the policy within approximately two months of the commencement of the case at the first meeting of the creditors on July 20, 1992. Considering the relatively small amount of cash surrender value involved in the policy at the time of the bankruptcy filing, the Court can infer as the debtor argues that the failure to list the policy was mere oversight in not recognizing that the policy had a cash value.

Although the debtor was arguably lethargic in amending his schedules to include the asset, there is no evidence he or his wife intended to hide the asset from the trustee at any time. See, e.g., *Matter of Cattel*, 32 B.R. 311, 313 (Bankr.S.D.Ohio 1983) (a mere defalcation in duties by a debtor do not necessarily result in a "waiver" of an allowable exemption); *In re Fox*, 80 B.R. 753 (Bankr.W.D.Pa. 1987) (evidence of concealment of substantial assets results in disallowance of claim of exemption); *In re Woodson*, 839 F.2d 610, 613–620 (9th Cir.1988) (manipulation by debtor in filing of pleadings to deflect inquiry will affect rights regarding death proceeds); *Matter of Howard*, 6 B.R. 220, 223 (Bankr. S.D.Ohio 1980) (debtor husband not personally guilty of concealment of debtor wife's insurance policy); *BancOhio National Bank v. Walters*, 724 F.2d 1081, 1082 (4th Cir.1984) (debtor allowed to claim exemption although policy not originally listed in schedules); *Payne v. Wood*, 775 F.2d 202, 205 (7th Cir. 1985) (unlikely debtor would be permitted to amend list of exemptions where omission suggested an intention to hide assets if they could get away with it) (dicta). Accordingly, this Court finds no reason to preclude Michael Monahan from amending his bankruptcy schedules to include the life insurance policy in question as an asset of which he was an owner at the time of the bankruptcy filing.

It will also be useful, before getting into application of the New Hampshire law to the individual cases, to set forth the applicable statutory provisions and relevant case law generally applicable to the treatment of life insurance policies in bankruptcy. It is particularly important to note what facts are *not* involved in the present cases that *were* involved in many of the cases cited by the parties, or discovered by the Court's own research, that generally deal with the questions presented but are not relevant precedents for the decisions presently pending before this Court.

legal rights asserted under such amendments. *Ward v. Turner*, 150 B.R. 378, 380 (E.D.La.1993) (allowance of amendment does not determine validity of claim).

6. See footnote 15, *infra*.

To begin, New Hampshire has "opted out" of the federal exemptions [7] which accordingly brings into play N.H.Rev.Stat.Ann. § 408:2 which provides in its entirety:

408:2 *Third Person.* If a policy of life or endowment insurance is effected by any person on his own life or on another life, in favor of a person other than himself having an insurable interest therein, the lawful beneficiary thereof other than himself or his legal representatives, shall be entitled to its proceeds and all other benefits against creditors and representatives of the person effecting the same; provided, that, subject to the statute of limitations, the amount of any premiums for said insurance paid in fraud of creditors, with interest thereon, shall enure to their benefit from the proceeds of the policy.

Also implicated, in cases where death benefits under a life insurance policy existing at the time of the bankruptcy filing become payable by a death occurring within 180 days following the bankruptcy filing, are the provisions of § 541(a)(5)(C) of the Bankruptcy Code as follows:

§ 541. *Property of the estate.*

(a) The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:

\* \* \* \* \* \*

(5) Any interest in property that would have been property of the estate if such interest had been an interest of the debtor on the date of the filing of the petition, and that the debtor acquires or becomes entitled to acquire within 180 days after such date—

\* \* \* \* \* \*

(C) as beneficiary of a life insurance policy or of a death benefit plan.

In applying these statutory provisions in the District of New Hampshire it is important to keep in mind that case decisions involving the same general questions about life insurance policies that are before the Court today may involve the "federal exemptions" under § 522(d) of the Bankruptcy Code, which provide much different exemption treatment for life insurance policies than does the New Hampshire statute.[8] Cases dealing with these explicit statutory provisions therefore are not generally useful in determining the application of the much different New Hampshire exemption statute. See, e.g., *BancOhio National Bank v. Walters,* 724 F.2d 1081 (4th Cir.1984) (harmonizing 11 U.S.C. 541(a)(5) and federal exemption statute 522(d)(7)); *Cryak v. Poynor,* 80 B.R. 75 (N.D.Texas 1987) (deciding whether life insurance proceeds which inured to the estate 180 days from the filing of the petition are exempt under federal exemption statute).

Likewise, where a state exemption statute is involved, but the language of the state statute is substantively different from the New Hampshire statute, such decisions are equally inapplicable. See *In re Woodson,* 839 F.2d 610 (9th Cir.1988) (interpreting California statute which essentially tracks the federal exemption). See cases and state statutory provisions cited in *3 Collier on Bankruptcy,* § 522.16 at 522–63, n. 3 (15th Ed.1992). Moreover, even cases decided in this District or Circuit under the old Bankruptcy Act often have inapplicable analysis due to the substantial changes between the Code and the Act in defining property of the estate generally and particularly with regard to life insurance policies.[9] See § 70(a)(5) of the Bankruptcy Act of 1898, 11 U.S.C. § 110(a)(5) (repealed 1979).

The specific facts of each case also may have a dramatic impact on the applicable law and subsequent outcome of the case. Pertinent factual inquiries include whether the

---

**7.** See footnote 1, *supra.*

**8.** Section 522(d) of the Bankruptcy Code deals explicitly not only with the life insurance *policy* per se but also explicitly with the cash surrender *value* of such a policy. Subsection (d)(7) exempts entirely "any unmatured life insurance contract owned by the debtor" and subsection

(11)(C) exempts any "payment under a life insurance contract" that insured the life of an individual of whom the debtor was a dependent on the date of the individual's death "to the extent reasonably necessary for the support of the debtor and any dependent of the debtor."

**9.** See discussion, *infra,* pp. 717–19.

beneficiary is a co-debtor in a bankruptcy case (which triggers the § 541(a)(5)(C) provision bringing post-petition recoveries into the estate); whether any insured or beneficiary was deceased at the time of bankruptcy or within 180 days thereafter; whether the debtor was the insured and owner of the policy with power to change beneficiaries or surrender the policy for cash value without restriction; and whether the debtor or some third person had the right to claim exemption under the applicable exemption statute.

In other words, although the recitation of the cases and holdings of other bankruptcy courts and circuits may be appropriate research for background purposes, and for general analysis, the difference in the actual wording of life insurance exemption statutes in other states as compared to the wording of the New Hampshire statute, combined with the myriad of determinative factual differences between all the cases, seriously inhibits the Court's ability to apply the reasoning of other courts to the issues before this Court.

The implicit assumption in beginning a discussion of the applicability of an exemption statute is that the property involved is property of the estate at the date of the filing of the bankruptcy petition. There can be no doubt that under the Bankruptcy Code, as distinguished from the prior Bankruptcy Act, no matter what contingencies or circumstances define the debtor's interest in a life insurance policy, it nevertheless will fall within the broad reach of the Bankruptcy Code's definition of property of the estate. 11 U.S.C. § 541(a)(1). "Cases decided under the Bankruptcy Code have held that even exempt property must initially be regarded as property of the estate and then claimed and distributed as exempt." *In re McAlister,* 56 B.R. 164, 166 (Bankr.D.Or.1985) (citing *In re Hendricks,* 11 B.R. 48, Bankr. W.D.Mo.1981). The question then becomes to what extent is the life insurance policy in question exempt under New Hampshire law.

### Cash Surrender Value

We begin our inquiry again with the language of the statute itself. In doing this, our inquiry necessarily has to focus on cer-

tain unique words in the New Hampshire life insurance exemption statute:

> 408:2 *Third Person.* If a policy of life or endowment insurance is effected *by any person on his own life* or on another life, in favor of a person other than himself having an insurable interest therein, *the lawful beneficiary* thereof *other than himself or his legal representatives,* shall be entitled to its proceeds and all other benefits against creditors and representatives of the person effecting the same; provided, that, subject to the statute of limitations, the amount of any premiums for said insurance paid in fraud of creditors, with interest thereon, shall enure to their benefit from the proceeds of the policy.

N.H.Rev.Stat.Ann. § 408:2 (emphasis added).

The plain language of the statute clearly delineates between the rights of a third person beneficiary and the rights of the insured. The statute does *not* exempt the policy itself to the owner thereof, as does the federal exemption statute and many of the state exemption statutes. The New Hampshire statute specifies the person entitled to claim exemption as "... the lawful beneficiary thereof ...". Thus, this statute only applies in the determination of the rights of the third party beneficiary as against the creditors and representatives of the insured. It is simply inapplicable and irrelevant in determining the rights of the insured. See *In re Mount,* 50 B.R. 305, 306 (Bankr.D.N.H.1985) (statute protects only third party beneficiaries). In all three of the pending cases the debtor or debtors were owners of the policies and had the power, as of the date of bankruptcy, to change beneficiaries or to cancel the policy and receive the cash surrender value. Those rights and powers became property of the estate on the filing date.

The debtor in *Cole* argues that protecting the cash surrender value of the policy is, in essence, protection of the beneficiaries' interest because it enables the debtor/insured to retain the policy for their benefit. Although the Court agrees that the exemption statutes should be broadly construed, in terms of their remedial purposes, the suggested interpretation of the New Hampshire law moves significantly beyond the plain lan-

guage of the statute.[10] Moreover, this argument fails in each of the present cases under both the state law (exemption rights) and the bankruptcy law (fixing rights as of date of filing) because at the date of the petition the beneficiary had no rights in the cash surrender value or the proceeds of the policy. The beneficiary in New Hampshire only has a right to the proceeds of the policy upon the death of the insured. Cf. *Barton v. Association*, 63 N.H. 535, 3 A. 627 (1885) (if insured retains power to change the beneficiary, the named beneficiary has only a contingent interest in proceeds of the policy); *Bowers v. Parker*, 58 N.H. 565 (1879) (as between owner/insured and vested beneficiary of life insurance policy, owner/insured has superior right of possession of policy while alive). Finally, since the trustee has absolute "collateral protection" for receiving the cash surrender value, i.e., by putting the insurance company on notice as to his rights in the policy, the trustee can afford to be liberal in repayment terms and timing in those cases in which the equities weigh in favor of giving the debtor an extended time for payment in order to preserve the policy in force.

In the case of *In re Bray*, 8 F.Supp. 761 (D.N.H.1934), it was held that the cash surrender value of a policy issued to the bankrupt by the Aetna Life Insurance Company (cash surrender value of $1,424) passed to the trustee in bankruptcy as an asset of the estate under § 70(a)(5) of the Bankruptcy Act of 1898, and was not exempt under the then existing state exemption statute made applicable by § 6 of the Bankruptcy Act of 1898. The District Judge emphasized that the life insurance policy involved in *Bray* was an endowment policy with a provision that if the insured was living at the end of the 25 year term of the policy the insured would receive the benefits of the policy rather than the beneficiary.

The opinion in *Bray* does include a statement, in dicta, to the effect that the result was not determined by the reserved power regarding the beneficiary: "The fact that by the terms of the policy the insured reserves the right to change the beneficiary is not necessarily determinative of the question, because the trustee takes the estate of the bankrupt as of the date of the bankruptcy." 8 F.Supp. at 763. While that statement has been relied upon by the debtors in *Cole* and *Murphy* as implying that an insured owner could keep the cash value of a policy notwithstanding the retention of a power to change beneficiaries—if an *endowment* policy is not involved—I do not think that that conclusion is correct. In any event the statement in *Bray* does not in my view amount to a square holding as binding precedent contrary to the ruling I have reached in this Opinion.

■ In sum, there is no basis to support an insured debtor's claimed exemption in the cash surrender value of the life insurance policy found in the New Hampshire statute.[11] Thus, the policy is property of the estate and to retain the policy, the debtor must pay the trustee the cash surrender value.[12] It should

---

10. If the Court were to "read into" the statute an intention to protect the policy holder (to keep the insurance in force for the beneficiary) the Court would be faced with the fact that there would be no countervailing limitation on the amount of benefits exempted, which the legislature might have added if it had in fact considered shifting the focus from the beneficiary to the insured. The Court has no power to "enact" such limitations. The New Hampshire legislature saw fit to choose a different course in the current statutory provision by explicitly placing the exemption only in the hands of "the lawful beneficiary thereof *other than himself.*" The emphasized language *excludes* the owner of the insurance contract. If a different policy choice is to be made, it is appropriately within the power of the legislature to do so after considering the countervailing factors involved.

11. The citation of the decision in *In re Simmons & Griffin*, 255 F. 521 (1st Cir.1919) is inapposite with regard to the treatment in bankruptcy of cash surrender values, for purposes of the present cases, in that it apparently was decided under the Massachusetts statute and caselaw, as well as the explicit provisions with regard to cash surrender values that formerly were set forth in § 70(a)(5) of the Bankruptcy Act of 1898.

12. It was held in *Holden v. Stratton*, 198 U.S. 202, 25 S.Ct. 656, 49 L.Ed. 1018 (1905) that a Washington State exemption statute that referred to "proceeds or avails" of life insurance policies as being exempt from creditors would include the cash surrender value of an "endowment" policy, i.e., the bankrupt could retain the policy without paying the cash surrender value over to the trustee. See also *Matter of Summers*, 253 F.Supp. 113 (N.D.Ind.1966), for a decision fol-

be noted in this context that this result flows from the New Hampshire statutory language itself and not from any considerations of "control" by the debtor whereby he could defeat the purpose of the exemption by his post-bankruptcy actions regarding the policies. Cf. *Damast,* 136 B.R. 11, 17 (Bankr. D.N.H.1991). To the extent anything to the contrary is implied in *Mount,* 50 B.R. at p. 306, I recede from any such implication.

To the extent that it may be argued, as is done in the *Cole* and *Murphy* cases, that alternately the *beneficiary* can claim the cash surrender value as against a trustee, that contention also must be rejected. It can of course be argued that "proceeds and all other benefits" language in the statute includes not only the death benefit, but all other rights under a life insurance policy, including cash surrender value.[13] However, under the precise statutory language of the New Hampshire exemption law, it is my view that "proceeds and all other benefits" must be read in conjunction with the context in which the language is used, i.e., benefits payable upon the death of the insured.

This follows from the fact that the statute refers to the rights of the "lawful beneficiary" of the policy. That language has meaning only in conjunction with the situation that exists upon the death of the insured under the applicable New Hampshire caselaw. It applies only in those situations in which the insured retained the power to change the beneficiaries during his or her lifetime but did not do so as of the time of death. As

discussed above, the New Hampshire caselaw enforces a retained power by an insured as owner to avail himself or herself of all rights pertaining to the policy, including the power to cash it out to obtain its cash surrender value free of restriction by the beneficiary. Since the exemption issue must be determined as of the date of the filing of the bankruptcy petition, the New Hampshire statute simply cannot be interpreted as granting any rights of exemption to the beneficiary in the cash surrender value of the policy as of the bankruptcy filing date. All of the insured debtors in the pending cases were still alive at that date; and all those insureds as owners had complete power to realize cash surrender values at that date.

### *Death Proceeds*

In *Monahan* the trustee argues that the death proceeds from the insurance policy are also not exempt. He contends first that since the policy was unlisted it became as such an asset free of any exemptions—including any of its proceeds. That contention falls by virtue of the amendment I have approved, listing the asset, which I have determined is appropriate inasmuch as the original omission was not done in bad faith.

■ The trustee argues alternatively that the proceeds of a life insurance policy which vest within 180 days of the filing of the petition, as distinguished from cash surrender monies, become property of the estate under § 541(a)(5)(C). However, this provision does not apply here.[14] Under the terms

lowing the *Holden* case involving another state exemption statute employing the "proceeds or avails" language. However, the New Hampshire statute does not have the additional language and in any event is more explicit in context in focusing upon the beneficiary as the only party having superior rights vis-a-vis creditors of the insured. See discussion, pp. 717–18 *supra,* p. 719, *infra.*

13. The decision in *In re Pfaffinger,* 164 F. 526 (W.D.Ky.1908), does hold that the cash surrender value of a life insurance policy on the life of the bankrupt insured was exempted to the bankrupt under a Kentucky statute which is essentially identical to the New Hampshire exemption statute. However, this decision simply follows the decision in *Holden,* uncritically, without any reference to the differing statutory language in the State of Washington as opposed to Kentucky.

Even under a state exemption statute that provided exemption for payments made "under an insurance policy" the cash surrender value of the policy was determined to be nonexempt in bankruptcy. The Court concluded that the "payments under" language was intended to reach payments made "on the occurrence of a future contingency for which the insured and the insurance carrier have contracted." *In re Brothers,* 94 B.R. 82, 85 (Bankr.N.D.Tex.1988). The Court noted that cash surrender values on the other hand "are more in the nature of an investment" since they are not paid "under" the policy but instead are paid to the owner if the policy is cancelled. 94 B.R. at 85.

14. Even if § 541(a)(5)(C) was somehow determined to apply to these death proceeds the result still would be the same. Specific state exemp-

of the Monahan life insurance policy, the debtor, Leisha Monahan, was not the beneficiary and thus had no interest in the proceeds of the policy at the date of the filing of the petition, at any time within 180 days after the filing, or at present. Likewise, the debtor Michael Monahan was not a beneficiary of the policy and therefore the right to the proceeds on the death of his wife post-petition did not vest in him. The only person with any interest in the death proceeds of the policy is Jessica, the debtor's minor child.

The case of *Barbin v. Moore*, 85 N.H. 362, 159 A. 409 (1932), provides some instructive comments in this context, although it did not involve a bankruptcy case. The statutory exemption language involved was somewhat different at that time but comparable for present purposes to the current New Hampshire statute. In the *Barbin* case it was held that the beneficiaries of a life insurance policy had superior rights in the death benefits over a claim by a creditor Bank who took a collateral assignment of the policy from the insured during his lifetime. In reaching that result, the Supreme Court of New Hampshire set forth the then applicable statutory language and the underlying rationale follows:

"When a policy of insurance is effected by a person on his own life or the life of another, expressed to be for the benefit of a third person or his representatives, the party for whose benefit such policy is so expressed to be made shall be entitled to the sum so insured, against the claims of the creditors or representatives of the party effecting the same." P.L., c. 277, s. 2. This statute deprives the creditors of any right to lay claim to the insurance, even where fraud upon them is charged. While upon proof of fraud they may recover the premiums paid by the decedent (Ib. s. 3), they have no other claim upon the fund. *Smith v. Bullard*, 61 N.H. 381. The statute applies to policies which reserve to the insured the right to change the beneficiary as well as to those which do not. The case last cited was of the former class. The same conclusion has been reached else-

where. *Farmer &c. Co. v. Albright*, 90 N.J.Eq. 132 [106 A. 545].

\* \* \* \* \* \*

It is said that since the decedent retained the power to change the beneficiaries those already named took no immediate interest in the policy. The law of this state is otherwise. The question has frequently arisen in suits upon the contracts of mutual benefit societies. These arrangements are life insurance contracts, and governed by the statutes and common law applicable to such insurance. *Smith v. Bullard*, 61 N.H. 381; *Barton v. Association*, 63 N.H. 535 [3 A. 627]; *Mellows v. Mellows*, 61 N.H. 137.

\* \* \* \* \* \*

The distinction between contingent and vested but defeasible is sometimes of importance when title to real estate is involved. But when the only title is a right under a contract to receive a sum of money which is to become due upon the happening of a future event, the need to observe the niceties of real estate nomenclature disappears. Under either the Massachusetts or the New Hampshire rule the designated beneficiaries took a present legal interest in the right to receive the money upon the death of the party insured. So long as the power of defeasance is not exercised, they stand in the position of one having a title which the law will recognize, and for the protection of which they are entitled to the usual legal and equitable remedies. *Mellows v. Mellows*, 61 N.H. 137.

\* \* \* \* \* \*

By the provision of the statute (P.L., c. 277, s. 2), as between the estate and the named beneficiaries, the insurance fund was the property of the latter. The estate owed a debt to the bank. The beneficiaries did not owe the debt, and they owned a right to the whole of the insurance, subject to any liens upon it. This right is not to be minimized by calling the interest contingent throughout the life of the insured. The statute provides otherwise.

tion provisions will trump "property of the estate" provisions. See *Holden v. Stratton*, 198 U.S. 202, 211–213, 25 S.Ct. 656, 658–59, 49 L.Ed. 1018 (1905).

As between these parties the plaintiff has been given as great rights as an innocent purchaser for value.

*Barbin v. Moore*, 85 N.H. 362, 366–368, 374, 159 A. 409 (1932).[15]

 Finally, the trustee argues in *Monahan* that he could have changed the beneficiary of the policy to name the debtors' estates as beneficiaries of the policy, if he had known of its existence, as opposed to either cancelling the policy and obtaining the cash surrender value from the insurance company, or obtaining the cash surrender value from the debtors in exchange for their retention of the policy. However, these are not the facts before the Court today nor is it the practice and policy of trustees to retain a life insurance policy in a chapter 7 case in anticipation of the unexpected demise of relatively young debtors. To do what the trustee suggests would mean that he would have had to refund the post-petition portion of the insurance premium paid by the debtors and undertaken to have the estate become responsible for future premiums on a speculation as to the debtors' lives. That is a highly unlikely scenario as to what would have occurred had the debtors originally included the policy in their schedules. I will find on this record that had the trustee known of the policy at the outset of the case he would have simply offered to allow it to remain in force provided that the debtors paid over the cash surrender value, and that such an offer would have been accepted in view of the relatively small amount involved.

The Court concludes in the *Monahan* case that while the debtor is required to pay the $600 cash surrender value into the bankruptcy estate the death proceeds pass to Michael Monahan *as guardian of Jessica* and are not now or ever were property of the bankruptcy estate. Since the proceeds are not property of the estate, and since the claim of exemption under state law runs only to the nondebtor beneficiary, no claim of exemption *by the debtors* was necessary as to the *possible* future death proceeds under the policy.[16]

### CONCLUSION

The Court rules under the New Hampshire statute and the federal bankruptcy laws that (1) the cash surrender value of a life insurance policy owned by a debtor-insured as of the date of a bankruptcy filing is property of the estate and is not exempt under the New Hampshire statute; (2) the debtor-insured should be given a reasonable opportunity to pay the cash surrender value into the estate, including payment in installments if equitably required, in order to retain the policy without cancellation; (3) the trustee can exercise the power to cancel the policy and realize the cash surrender value from the insurance company in the event that the debtor-insured does not pay that value into the estate; (4) the proceeds of a life insurance policy held by a debtor which are paid to a nondebtor or non-estate beneficiary after a debtor's post-bankruptcy death are not property of the estate, whether or not they are received within 180 days of the filing of a bankruptcy petition; (5) such death proceeds are exempt to the beneficiary rather than to the surviving co-debtor who is an insured or is not himself or herself a beneficiary; and (6) in such a situation the trustee in bankruptcy does not have rights to the death proceeds superior to that of the lawful beneficiary. Appropriate orders will be entered separately in each of the pending cases in accordance with this Opinion.

### ORDER

In accordance with the Memorandum Opinion entered contemporaneously in this case this date it is hereby

---

**15.** Compare *In re Whelpley*, 169 F. 1019 (D.N.H. 1909), holding in a somewhat cryptic and brief opinion (two paragraphs) that a married woman's exemption statute, having language significantly different from the present general statutory exemption for insurance policies, would exempt a partly paid up life insurance policy from a bankruptcy estate. It is impossible from the opinion to determine the relevant factual context involved.

**16.** The assertion by Michael Monahan in these proceedings of exemption rights under the New Hampshire law may be deemed an assertion by Mr. Monahan acting as guardian of his minor child for informational purposes only. In the unique factual circumstances of this case some such assertion was necessary to join issue with the trustee as to appropriate disposition of the death proceeds.

ORDERED, ADJUDGED and DE-CREED as follows:

1. The Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a) and the Standing Order of Referral of Title 11 Proceedings to the United States Bankruptcy Court for the District of New Hampshire, dated January 18, 1994 (DiClerico, C.J.). This is a core proceeding in accordance with 28 U.S.C. § 157(b).

2. For the reasons set forth in the Memorandum Opinion, the cash surrender value of the life insurance policy in question is property of the estate and is not exempt under N.H.Rev.Stat.Ann. § 408:2. The death proceeds from the insurance policy are not property of the estate.

3. The trustee's objection to exemptions (Court Doc. 19) is hereby granted with respect to the cash surrender value of the policy and denied with respect to the $50,000 death proceeds. The trustee's motion for turnover and accounting (Court Doc. 23) also is hereby denied as to the death proceeds.

4. The debtor shall forthwith pay to the trustee the $600 cash surrender value of the policy.

DONE and ORDERED.